# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

MARTHA CRAFT,

        Plaintiff,                  Case Number: 07-11631

v.                                      JUDGE PAUL D. BORMAN
                                           UNITED STATES DISTRICT COURT

ALLSTATE INSURANCE COMPANY,

        Defendant.

_____ /

## ORDER: (1) DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; (2) DISMISSING WITHOUT PREJUDICE DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S EXPERT RENEE LAPORTE, R.N.; (3) DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT; AND (4) DISMISSING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO STRIKE EXPERT W. JOHN BAKER

Before the Court are the following motions: 1) Defendant's Motion for Summary Judgment (Doc. No. 53), filed January 12, 2009; 2) Defendant's Motion to Strike Testimony of Plaintiff's Expert Renee LaPorte, R.N. (Doc. No. 54), filed January 12, 2009; 3) Plaintiff's Cross-Motion for Summary Judgment (Doc. No. 56), filed January 14, 2009; and 4) Plaintiff's Motion to Strike Expert W. John Baker (Doc. No. 57), filed January 26, 2009. Before the hearing, the parties resolved Defendant's Motion for Partial Summary Judgment (Doc. No. 51), and Defendant withdrew its Motion to Show Cause (Doc. No. 52). The Court heard oral arguments on the remaining motions at a hearing on April 14, 2009. Having considered the entire record, and for the reasons that follow, the Court **DENIES** the parties' motions for summary judgment and **DISMISSES WITHOUT PREJUDICE** the parties' motions to strike.

**I. BACKGROUND**

This diversity case arises out of an automobile accident Plaintiff Martha Craft ("Plaintiff") was involved in on August 13, 1994.  Plaintiff is suing Defendant Allstate Insurance Company ("Defendant") for attendant care benefits, which Defendant has refused to pay.

On a rainy morning in August 1994, Plaintiff was driving to work when she was rear ended.  (Def.'s Mot. Summ. J. Ex. F, Pl.'s Dep. 10, 12).  According to Plaintiff, she suffered a broken neck and a closed head injury as a result of the accident.  (*Id.* at 12).  The police were not called to the accident scene, and Plaintiff drove to work after the accident.  (*Id.* at 14).  After arriving at work, Plaintiff felt "dazed" and was transported to the hospital in an ambulance.  (*Id.* at 15).  There is no evidence of what diagnosis, if any, Plaintiff received at the hospital.  Plaintiff has not worked since the accident.  (*Id.* at 10).

On September 12, 1994, Plaintiff was examined by Dr. Leonard Boggs, a physiatrist.  (Pl.'s Resp. Ex. B, Headache and Facial Pain Center Record, 9/12/94).  Plaintiff complained to Dr. Boggs of headaches, nausea and vomiting, "posterior neck pain irradiating to both upper extremities," joint pain and clicking, throat pain, difficulty in swallowing, concentration lapses and "lumbosacral pain." (*Id.*)  Plaintiff also complained that she was unable to read, sit for long periods of time, concentrate and memorize numbers.  (*Id.*)  Dr. Boggs noted that Plaintiff's headaches had "progressively increased" since the accident, but a CT scan taken at the Henry Ford Hospital was "supposedly negative." (*Id.*)  Dr. Boggs physical examination "revealed signs of flexion-extension injury to the neck with cervical myofibrositis; signs of lumbosacral sprain; and temporomandibular joint pain-dysfunction syndrome." (*Id.*)  Dr. Boggs considered Plaintiff to be "disabled." (*Id.*)

On November 8, 1994, Plaintiff had a neuropsychological assessment.  (Def.'s Mot. Summ.

J. Ex. J., Neuropsychological Assessment, 11/8/94). Plaintiff reported headaches, sensory disturbances, motor and speech difficulties, personality changes, sleep and appetite disturbances and hearing ringing and noises without environmental confirmation. (*Id.*) The neuropsychologist, Anne Baird, Ph.D., concluded that her symptoms were consistent with "the neuropathological process involved in acceleration-deceleration injuries subsequent to a head injury. However, the history and neuropsychological test data suggest that any underlying traumatic brain injury is likely to be mild at most." (*Id.*) Dr. Baird stated that she suspected that Plaintiff's symptoms would resolve over the next several months. (*Id.*)

Plaintiff's symptoms did not resolve over the next several months. Rather, Plaintiff continued to receive treatment for her cognitive and psychiatric problems for the next 15 years. In the 15 years since the accident, Defendant has paid and continues to pay Plaintiff personal injury protection benefits ("PIP") in the form of medical benefits, wage loss benefits, and household replacement services benefits. (Pl.'s Resp. 4). Defendant has not, however, paid attendant care benefits, which are the subject of this lawsuit.

In November 2007, Plaintiff's sister, Mary Craft, submitted an affidavit of attendant care services, which she has provided since November 5, 1997, to Defendant. (Pl.'s Resp. Ex. E, Affidavit of Attendant Care Services, 11/5/07). In January 2007, Plaintiff's psychologist, Philip Lanzisera, Ph.D., and her psychiatrist, Dr. Catherine Frank, wrote letters to Defendant in which they stated that Plaintiff must be constantly supervised due to her closed head injury and the chronic cognitive impairment she suffers as a result. (Pl.'s Resp. Ex. A, Lanzisera ltr. 1/29/07; Frank ltr. 1/9/07). Defendant has refused to pay the attendant care benefits.

After Defendant denied Plaintiff's claim for attendant care benefits, Plaintiff filed suit in

Wayne County Circuit Court. (Notice of Removal, Complaint). In her Complaint, Plaintiff seeks payment of attendant care benefits. (*Id.* 11). Defendant removed Plaintiff's complaint to this Court on April 11, 2007. (Doc. No. 1).

During discovery, Plaintiff was evaluated by Defendant's neuropsychologist, W. John Baker, Ph.D. Dr. Baker conducted a number of neuropsychological tests and concluded that "[t]he pattern of strengths and weaknesses presented within this comprehensive neuropsychological test battery is not consistent with the profile typically found in cases of traumatic brain injury." (Def.'s Mot. Summ. J. Ex. K, Dr. Baker Neuropsychological Evaluation 8). Dr. Baker noted the lack of evidence that Plaintiff hit her head during the accident, and opined that, "the diagnosis of closed head injury has developed over time as a result of Ms. Craft's subjective complaints and misunderstanding of her accident history." (*Id.* at 9). Nevertheless, Dr. Baker diagnosed Plaintiff with Somatoform disorder, which presents with physical symptoms that suggest a general medical conduction that are not fully explained by the general medical condition, by the direct effects of a substance, or by another mental disorder. (Pl.'s Resp. Ex. I, Baker Dep. 18-19). The physical symptoms experienced by a Somatoform sufferer must "cause clinically significant distress or impairment in social, occupational, or other areas of functioning." (Baker Dep. 19). Dr. Baker stated that he believed Plaintiff was pre-disposed to having Somatoform disorder, based on her personality and psychiatric makeup, but admitted that the car accident contributed to her development of Somatoform disorder. (Baker Dep. 25).

Plaintiff was also examined by Dr. Eliot Wagenheim, the psychiatrist hired by Defendant. Dr. Wagenheim concurred with Plaintiff's treating physicians that Plaintiff suffered a mild traumatic brain injury, but opined that her physical symptoms related to the traumatic brain injury should have

4

resolved "early on." (Pl.'s Resp. Ex. H, Wagenheim Dep. 39-40). When Plaintiff's counsel asked Dr. Wagenheim whether "it's most likely that she sustained a mild traumatic brain injury in the accident which resolved within three to six months after, but continued to experience psychiatric and cognitive problems not from the traumatic brain injury but from the psychiatric sequel of the trauma?" (Wagenheim Dep. 40), Dr. Wagenheim responded, "Correct." (Wagenheim Dep. 40). Dr. Wagenheim further opined that the treatment Plaintiff has received over the past 15 years has reinforced her disability and made her perceive her condition to be more serious than it actually is. (Wagenheim Dep. 66). Dr. Wagenheim believes that if Plaintiff was treated with "tough love" she would realize that she does not need constant care. (Wagenheim Dep. 66).

Plaintiff was also evaluated by a neuropsychologist, Bradley G. Sewick, Ph. D., who she hired during the litigation. Dr. Sewick diagnosed Plaintiff with cognitive disorder and mood disorder, both of which were caused by the 1994 accident and resultant head injury. (Pl.'s Resp. Ex. G, Dr. Sewick Neuropsychological Evaluation 9).

In addition, Plaintiff's psychiatrist, Dr. Catherine Frank, was deposed. Dr. Frank has currently diagnosed Plaintiff with a cognitive disorder not otherwise specified, which means that Plaintiff has cognitive complaints that do not fit within a specific category but are present and consistent over a period of years. (Pl.'s Resp. Ex. F, Frank Dep. 46-47). In the past, Dr. Frank has treated Plaintiff for clinical depression and post-traumatic stress disorder resulting from her closed head injury. (Frank Dep. 47). Dr. Frank considers Plaintiff's depression and post-traumatic stress disorder to be in remission. (Frank Dep. 49). Dr. Frank believes that Plaintiff suffered a mild traumatic brain injury in the accident, which healed, but even after it healed, Plaintiff still sees herself as defective. (Frank Dep. 89). Dr. Frank explained that Plaintiff feels defective because:

5

> [S]he had a catastrophic emotional reaction to this accident and for whatever reason over the years she has seen herself as defendant and again what's most surprising is that she acts defective too.
> Again it's more than just low self-esteem it's that repeatedly that this has been a consistent complaint of people who know her and live with her.

(Frank Dep. 90). Dr. Frank testified that Plaintiff needs constant supervision because her impairments jeopardize her safety; Plaintiff is unable to concentrate long enough to finish cooking, she does not recognize the danger of opening the door to strangers, she gets lost in her own neighborhood and she cannot manage her own money. (Frank Dep. 86).

To reiterate, Defendant is contesting the payment of attendant care benefits on the ground that Plaintiff's cognitive disorder did not arise from the 1994 car accident.

## II. ANALYSIS

### A. The Parties' Motions to Strike

Defendant's Motion to Strike Testimony of Plaintiff's Expert Renee LaPorte, R.N., and Plaintiff's Motion to Strike Expert W. John Baker are prematurely filed motions in limine. The Court, therefore, dismisses without prejudice both motions to strike, with the understanding that the parties will refile the motions if necessary, at the appropriate time.

### B. The Parties' Motions for Summary Judgment

The United States Court of Appeals for the Sixth Circuit has summarized the legal standard for summary judgment motions as follows:

> Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In reviewing a motion for summary judgment, we view the evidence, all facts, and any inferences in the light most favorable to the nonmoving party. "To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact." A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably

find for the [non-movant]."

*Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 500-01 (6th Cir. 2007) (internal citations omitted).

Defendant argues that it is entitled to summary judgment on Plaintiff's claim for attendant care benefits because Plaintiff has not shown that her injuries arose out of a motor vehicle accident. (Def.'s Mot. Summ. J. 8). Plaintiff argues she is entitled to summary judgment because her injuries arose out of the motor vehicle accident; as evidence by the fact that Plaintiff did not have any significant physical or psychiatric issues or cognitive problems before the accident. (Pl.'s Mot. Summ. J. 1).

A no-fault insurer is liable for "accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle." In order to collect attendant care benefits, therefore, the claimant must prove that his or her injury arose out of a motor vehicle accident. An injury arises from a motor vehicle accident if there is "more than an incidental, fortuitous, or but-for causal connection," but the plaintiff does not have to prove direct or proximate causation. *Scott v. State Farm Mutual Auto. Ins. Co.*, 278 Mich. App. 578, 586 (2008), vacated in part, 482 Mich. 1074 (2008) (deleting the sentence in the court of appeals opinion stating that "any causal connection or relationship will do."). Further the motor vehicle accident does not have to be the sole cause of the injury; the insurer is liable even if independent causes exist. *Id*. at 585.

In *Scott v. State Farm Mutual Auto. Ins.Co*., 278 Mich. App. at 579, the plaintiff suffered a brain injury and other injuries in a 1981 car accident. In 1991, the plaintiff developed high cholesterol, which, at first, was controlled through diet and exercise. *Id*. When diet and exercise were not enough, the plaintiff's doctor prescribed her Zocor. *Id.* at 580. The plaintiff's treating

7

physician wrote a letter to State Farm opining that the plaintiff's high cholesterol was directly related to the sequelae from her auto accident." *Id.* at 580. State Farm paid for the Zocor. *Id.* at 581. In 2003, when the Zocor was no longer effective in treating the plaintiff's high cholesterol, a different treating physician opined that the plaintiff's high cholesterol was "at least partially related to her traumatic brain injury . . . Additionally her cognitive problems influence her eating behaviors," and prescribed the plaintiff Zetia to be taken in conjunction with Zocor. *Id*. at 581. Later, the doctor prescribed Vytorin, a combination of Zocor and Zetia. *Id.* at 581. State Farm refused to pay for Zetia or Vytorin, on the grounds that the plaintiff's need for the medication was insufficiently related to the 1981 car accident. *Id*. at 581.

State Farm moved for summary disposition, arguing that plaintiff's high cholesterol was not an injury "arising out of" a motor vehicle accident. *Id.* at 581. The probate court denied State Farm's motion, and the court of appeals affirmed, concluding that the plaintiff had presented evidence of a causal connection between the accident and her high cholesterol. *Id*. at 586. Specifically, the plaintiff presented testimony that the accident caused brain and skeletal injuries, which prevented her from exercising and caused her to make poor food choices. *Id*. at 586. Although the plaintiff had a genetic predisposition to high cholesterol, the court of appeals found that the plaintiff was not required to exclude other possible causes of her condition. *Id*. at 586. The court, therefore, held that the plaintiff presented evidence sufficient to raise a genuine issue of material fact. *Id*. at 586.

The instant case presents facts similar to those in *Scott*, 278 Mich. App. at 580-581. Here, Plaintiff was involved in a motor-vehicle accident in which she suffered a brain injury and other physical injuries. Plaintiff has presented evidence that her cognitive impairments and psychological

problems stem from the traumatic brain injury Plaintiff sustained in the car accident. It is undisputed that Plaintiff suffers from cognitive and psychological problems. All of the medical doctors and psychologists who examined Plaintiff agreed that Plaintiff has some type of cognitive and/or psychological impairment, and her doctors agree that the cognitive and/or psychological impairments were caused by the 1994 auto accident. (Baker Dep. 18-19; Wagenheim Dep. 40; Dr. Sewick Neuropsychological Evaluation 9; Frank Dep. 47, 90). The fact that Defendant's experts testified that Plaintiff was pre-disposed to developing the cognitive and psychological conditions from which she now suffers is not relevant to deciding whether Plaintiff's injuries arose from a motor vehicle accident. Plaintiff is not required to exclude other possible cause of her condition in order to prove that her injuries arose from her 1994 motor vehicle accident. *See Scott*, 278 Mich. App. at 586. The record contains evidence that Plaintiff's injuries arose from the motor vehicle accident, and she has sustained her burden of creating a genuine issue of material fact necessary to defeat Defendant's motion for summary judgment.

Defendant, in support of its motion, cites to *Nowyorkas v. Farm Bureau Mutual Insurance*, No. 168726, 1996 WL 33681826 (Mich. App. May 24, 1996). In *Nowyorkas*, the insurer refused to pay for treatment for the plaintiff's shoulder because the plaintiff had a pre-existing shoulder injury. *Id.* at * 1. On appeal, the insurer contested argued that the trial court improperly instructed the jury that "if the jurors were unable to separate damages for injuries caused by the automobile accident from those which were preexisting, 'then the entire amount of plaintiff's damages must be assessed against defendant.'" *Id.* at *1, quoting SJI2d 50.11. The Michigan Court of Appeals, in an unpublished opinion, held that the jury instruction relieved the plaintiff of his burden of proof under the no-fault act, namely that his injury arose from a motor vehicle accident. *Id.* at *1.

9

*Nowyorkas* is distinguishable from the case at bar. First, there is no evidence that Plaintiff suffered from cognitive or psychological problems before the accident; thus, no preexisting condition existed. Plaintiff's alleged predisposition to cognitive and psychological difficulties is not analogous to a preexisting shoulder injury; here, Plaintiff's cognitive and psychological conditions did not present until after the accident. Second, Plaintiff has not been relieved of her burden of proving that her injuries arose from a motor vehicle accident. Plaintiff must show that her cognitive and psychological injuries arose from the motor vehicle accident and were not caused by an unrelated incident. Plaintiff has presented evidence that her injuries arose from a motor vehicle accident. Accordingly, Defendant's motion for summary judgment is denied.

Plaintiff's motion for summary judgment is also denied. As discussed above, a question of material facts exits regarding whether Plaintiff's injuries, i.e. her cognitive and psychological impairments, arose from the 1994 car accident. Plaintiff has not shown, as a matter of law, that her injuries arose from the accident. Defendant has presented contradictory evidence, from its experts, which creates a question of fact for the jury. Therefore, this Court denies Plaintiff's motion for summary judgment.

## III. CONCLUSION

For the reasons discussed above, the Court:

(1) **DISMISSES WITHOUT PREJUDICE** Defendant's Motion to Strike Testimony of Plaintiff's Expert Renee LaPorte, R.N. (Doc. No. 54);

(2) **DISMISSES WITHOUT PREJUDICE** Plaintiff's Motion to Strike Expert W. John Baker (Doc. No. 57);

(3) **DENIES** Defendant's Motion for Summary Judgment (Doc. No. 53);

(4) **DENIES** Plaintiff's Cross-Motion for Summary Judgment (Doc. No. 56).

SO ORDERED.

                          S/Paul D. Borman
                          PAUL D. BORMAN
                          UNITED STATES DISTRICT JUDGE

Dated:  April 30, 2009

                      CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on April 30, 2009.

                          S/Denise Goodine
                          Case Manager